**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **HYPER SEARCH LLC,** | |
| Plaintiff, | Civil Action No. _____ |
| vs. | **PATENT CASE** |
| | **JURY TRIAL DEMANDED** |
| **FOURSQUARE LABS, INC.,** | |
| Defendant. | |

**ORIGINAL COMPLAINT**
**FOR PATENT INFRINGEMENT AGAINST FOURSQUARE LABS, INC.**

Plaintiff Hyper Search, LLC ("Hyper Search" or "Plaintiff"), by and through its attorneys, hereby alleges for its Complaint against Defendant Foursquare Labs, Inc. ("Foursquare" or "Defendant") on personal knowledge as to its own activities and on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

**THE PARTIES**

2.      Plaintiff Hyper Search LLC is a Texas limited liability company with its principal place of business at 5068 W. Plano Parkway, Suite 300, Plano, Texas 75093.

3.      Defendant Foursquare Labs, Inc. is a Delaware corporation with a place of business at 568 Broadway, 10th Floor, New York, New York 10012, and can be served through its registered agent, Business Filings Incorporated, 108 West 13th Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4.    Foursquare is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Delaware Long-Arm Statute, due at least to its substantial business in this forum, including at least a portion of the infringements alleged herein.

5.    Foursquare is subject to this Court's specific and general personal jurisdiction because Foursquare is a Delaware corporation.  Foursquare may be served with process via its registered agent, Business Filings Incorporated, 108 West 13th Street, Wilmington, Delaware 19801.

6.    Foursquare has committed and continues to commit acts of infringement within the state of Delaware, as alleged herein.

7.    Foursquare uses and offers to its customers its Foursquare system, including the "Foursquare City Guide" multimedia application ("app") and its Foursquare neural network system, for controlling venue information output based on user feedback about venues, such as restaurants and other entities.  (*See* Hyper Search's Claim Chart for claim 1 of the '412 patent, Ex. B at 1-8.)

8.    As detailed in paragraphs 39-47, 71-79 and/or 103-112 below, Foursquare offers its system which allows a user to provide feedback and display ratings in the Foursquare app based on a ranking value determined by the user's rating of venues where they have visited.  (*Id.* at 1-2.)

9.    Foursquare allows a plurality of information sources (*e.g.,* users) to provide information in the form of ratings and review information about venues which are associated with venue instances and displayed for users in the Foursquare app.  (*Id.* at 1-2.)

10.    Foursquare employs a Foursquare neural network module that selects one or more venue instances displayed through the Foursquare app to receive information regarding interactions with venues from the plurality of information sources (*e.g.,* users) in the form of ratings and likeness.  (*Id.* at 2-3.)

11.    Foursquare has derived substantial revenues from its infringing acts occurring within Delaware.

12.    Foursquare is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Delaware.

13.    Foursquare provides private and public content as well as social networking services through its website, www.foursquare.com, and its mobile applications for several mobile platforms including iOS, Windows Phone, and Android.

14.    Foursquare is subject to the Court's personal jurisdiction at least due to its sale of products or services within Delaware.

15.    Foursquare has committed such purposeful acts or transactions in Delaware such that it reasonably should know and expect that it could be haled into court in this State as a consequence of such activities.

16.    As detailed in paragraphs 39-47, 71-79 and/or 103-112 below, Foursquare supports the creation and maintenance of a neural network module which provides objects to recipients (*e.g.,* ratings and reviews to venue instances in foursquare.com through app interfaces on user mobile devices) and the recipients enable users to generate feedback about the information within the state and District of Delaware.

17.     Venue is proper in this district under 28 U.S.C. § 1400(b).  Foursquare is incorporated in Delaware.  Upon information and belief, from and within this District, Foursquare has committed at least a portion of the infringements at issue in this case.

18.     For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

## COUNT I
## PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 6,792,412

19.     Plaintiff incorporates the above paragraphs herein by reference.

20.     On September 14, 2004, the United States Patent and Trademark Office duly and legally issued United States Patent No. 6,792,412 ("the '412 patent").  The '412 patent is titled "Neural Network System and Method for Controlling Information Output Based on User Feedback."  The application leading to the '412 patent was filed on February 2, 1999.  A true and correct copy of the '412 patent is attached hereto as Exhibit A and incorporated herein by reference.

21.     Plaintiff Hyper Search LLC is the assignee of all right, title and interest in the '412 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '412 patent, including for past damages.

22.     The '412 patent relates to a system and method for controlling information output based on user feedback regarding that information.  (*See* Ex. A at 1:9–11.)[1]  The '412 patent describes and enables "a computer network-based neural network system that controls

---

[1] Citations to patents in this Complaint refer to columns and lines within columns of any cited patent.  For example, the citation referenced by this footnote refers to column 1, at lines 9 through 11, in the '412 patent.

information provided as output from the system based on learned experience gained from user feedback regarding the value of the information."  (*Id.* at 1:10–15.)

23.    The claims of the '412 patent are directed at providing a unique computing solution that addresses a problem particular to computer networks—providing an intelligent filtering system which selects information for delivery based on indications of what  subject matter a recipient is likely to find useful.  (*Id.* at 2:10–14.)

24.    Providing an intelligent filtering system for a plurality of clients connected via a network in the manner claimed in the '412 patent solved new challenges over the techniques and systems known in the art at the time.

25.    Prior to the priority date of the '412 patent, systems, such as electronic mail systems, enabled users to create information filters based on attributes such as content or the initiator of a message contained in an email.  (*Id.* at 1:27-32.)

26.    These information filters suffered from the fact that these electronic mail filtering systems required that that the attributes be determined in advance and provided in advance for the filtering.  (*Id.* at 1:36-45.)

27.    These early systems required the identification of those attributes of emails, or other information, which are to be excluded before being able to create a filter.  (*Id*. at 1:36-45.)

28.    The early systems were lacking in that it is often difficult to determine the proper attributes to be used as the basis for filtering.  (*Id.* at 1:36-45.)

29.     The '412 patent overcame these disadvantages by, for example, describing and enabling a system and method for delivering information "which selects information for delivery based on indications of what subject matter a recipient is likely to find useful."  (*Id.* at 2:10–14.)

30.     The claimed technology of the '412 patent, for controlling information output based on user feedback about the information, was not a conventional business practice.

31.     The '412 patent does not preempt every way of "controlling information output based on user feedback about the information that includes a plurality of information sources…". ('412 patent, abstract.)

32.     The '412 patent does not preempt the field or preclude the use of other systems for controlling information output based on user feedback about the information.

33.     Other techniques for systems that control information output based on user feedback about the information are not included within the scope of the '412 patent's claims. These include the prior art referenced in the '412 patent.  *See, e.g.*, U.S. Patent No. 6,085,178 to Bigus et al.

34.     The '412 patent claims are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

35.     The '412 patent does not take a well-known or established business method or process and "apply it to a general purpose computer."  Instead, the specific system and processes described in the '412 patent have no direct corollary to a business process that predates the advent of the internet.

36.     The '412 patent claims are directed toward a solution rooted in computer technology and uses technology, unique to computers and networks, to overcome a problem specifically arising in the realm of controlling information output based on user feedback about the information.

37.    The '412 patent claims are not directed at a mere mathematical relationship or formula.

38.    The '412 patent claims cannot be performed by a human, in the human mind, or by pen and paper.

39.    Upon information and belief, Foursquare directly infringes and continues to directly infringe at least claim 1 of the '412 patent, in the State of Delaware and elsewhere in the United States, under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, importing and/or providing and causing to be used a system, via foursquare.com, for controlling information output based on user feedback about the information, as in claim 1 of the '412 patent.  (*See* Hyper Search's Claim Chart for claim 1 of the '412 patent, Ex. B at 1-8.)

40.    Foursquare provides a system via foursquare.com for controlling information output based on user feedback about the information.  The Foursquare system includes a plurality information sources to provide to provide information in the form of venue ratings and reviews through the Foursquare app.  (*Id.* at 1-2.)

41.    The Foursquare system also includes a Foursquare neural network module that selects one or more venue instances in the Foursquare app to receive information regarding interactions with venues from the plurality of information sources (*e.g.* users) in the form of ratings and likeness.  The Foursquare system also includes one or more servers associated with the neural network module and app interfaces on user's mobile devices enabling users to generate feedback on the information.  (*Id.* at 2-3.)

42.    The Foursquare neural network module generates a rating value for venues at the end of an epoch (*e.g.,* user session).  The Foursquare system displays venue ratings in the Foursquare app based on a ranking value determined by the user's rankings and other

information regarding the venues.  The Foursquare system also re-determines the ranking values of venues based on new interactions at new timing and on the perceived relevance of venues to the user.  (*Id.* at 2-6.)

43.    The Foursquare system includes a number of information sources and at least one neural network module that selects one or more objects (*e.g.,* venue instances) from which to receive information from those information sources.  (*Id.* at 1-3.)

44.     The Foursquare system selects the objects to receive information based at least in part on one or more inputs and one or more weight values.  (*Id.* at 2-3.)

45.    A server associated with a neural network module provides one or more of the objects to one or more recipients (*e.g.,* venue instances of foursquare.com through app interfaces on user mobile devices) and the recipients enable one or more users to generate feedback about the information.  (*Id.* at 3-5.)  The neural network module generates a rating value for one or more of the objects at the end of, for example, a time period, session, or event.  (*Id.* at 5-8.)

46.    The Foursquare servers offer a service to users (that are using a computing device) in Delaware to interact with the foursquare.com site to control information output based on user feedback about the information as recited in claim 1 of the '412 patent.

47.    Users in Delaware have used and interacted with the Foursquare system as recited in claim 1 of the '412 patent.

48.    Upon information and belief, since at least the time it received notice by this Complaint, Foursquare has induced and continues to induce others to infringe at least one claim of the '412 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to

Foursquare's partners and customers, whose use of the accused instrumentalities constitutes direct infringement of at least one claim of the '412 patent.

49.    In particular, Foursquare's actions that aid and abet others such as their partners and customers to infringe include advertising and distributing the accused instrumentalities and providing instruction materials, training, and services regarding the accused instrumentalities. Upon information and belief, Foursquare has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Foursquare has had actual knowledge of the '412 patent and that its acts were inducing the infringement of the '412 patent since at least the date Foursquare received notice by this Complaint that such activities infringed the '412 patent.

50.    Despite Hyper Search's notice to Foursquare by this Complaint regarding the '412 patent, Foursquare continues to infringe the '412 patent.  Upon information and belief, since at least the time it received notice by this Complaint, Foursquare's infringement has been and continues to be willful.

51.    Hyper Search has been harmed by each of Foursquare's infringing activities with respect to the '412 patent.

52.    Hyper Search reserves the right to modify its infringement theories as discovery progresses in this case.  It shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint.  Hyper Search intends the claim chart (Exhibit B) for the '412 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim charts are not Hyper Search's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II

## PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,120,615

53.     Plaintiff incorporates the above paragraphs herein by reference.

54.     On October 10, 2006, the United States Patent and Trademark Office duly and legally issued United States Patent No. 7,120,615 ("the '615 patent").  The '615 patent is titled "Neural Network System and Method for Controlling Information Output Based on User Feedback."  The original application leading to the '615 patent was filed on August 30, 2004.  A true and correct copy of the '615 patent is attached hereto as Exhibit C and incorporated herein by reference.

55.     Plaintiff Hyper Search LLC is the assignee of all right, title and interest in the '615 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '615 patent, including for past damages.

56.     The '615 patent relates to a system and method for controlling information output based on user feedback regarding that information.  (*See* Ex. C at 1:13-15.)  The '615 patent describes and enables "a computer network-based neural network system that controls information provided as output from the system based on learned experience gained from user feedback regarding the value of the information."  (*Id.* at 1:16–20.)

57.     Prior to the priority date of the '615 patent, systems, such as electronic mail systems, enabled users to create information filters based on attributes such as content or the initiator of a message contained in an email.  (*Id.* at 1:33-38.)

58.     These information filters suffered from the fact that these electronic mail filtering systems required that that the attributes be determined in advance and provided for the filtering.  (*Id.* at 1:42-50.)

59.    These early systems required the identification of those attributes of emails, or other information, which are to be excluded before being able to create a filter.  (*Id.* at 1:42-50.)

60.    The early systems were lacking in that it is often difficult to determine the proper attributes to be used as the basis for filtering.  (*Id.* at 1:42-50.)

61.    The '615 patent overcame these disadvantages by, for example, describing and enabling a system and method for delivering information "which selects information for delivery based on indications of what subject matter a recipient is likely to find useful."  (*Id.* at 2:16-20.)

62.    The claimed technology of the '615 patent for controlling information output based on user feedback about the information was not a conventional business practice.

63.    The '615 patent does not preempt every way of "controlling information output based on user feedback about the information that includes a plurality of information sources…". ('615 patent, abstract.)

64.    The '615 patent does not preempt the field or preclude the use of other systems for controlling information output based on user feedback about the information.

65.    Other techniques for systems that control information output based on user feedback about the information are not included within the scope of the '615 patent claims. These include the prior art referenced in the '615 patent.  *See*, *e.g.*, U.S. Patent No. 6,085,178 to Bigus et al.

66.    The '615 patent claims are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

67.    The '615 patent does not take a well-known or established business method or process and "apply it to a general purpose computer."  Instead, the specific system and processes

described in the '615 patent have no direct corollary to a business process that predates the advent of the internet.

68. The '615 patent claims are directed toward a solution rooted in computer technology and uses technology unique to computers and networks to overcome a problem specifically arising in the realm of controlling information output based on user feedback about the information.

69. The '615 patent claims are not directed at a mere mathematical relationship or formula.

70. The '615 patent claims cannot be performed by a human, in the human mind, or by pen and paper.

71. Upon information and belief, Foursquare directly infringes and continues to directly infringe at least claim 6 of the '615 patent, in the State of Delaware and elsewhere in the United States, under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, importing and/or providing and causing to be used a system, via foursquare.com, for controlling information output based on user feedback about the information, as in claim 6 of the '615 patent.  (*See* Hyper Search's Claim Chart for claim 6 of the '615 patent, Ex. D at 1-6.)

72. The Foursquare system includes a server providing pieces of information to a recipient via slots that present the pieces of information to a user in in the form of venue instances in the Foursquare app.   The Foursquare system also includes a Foursquare artificial intelligence module that ranks and places the venue instances in their respective slots in the Foursquare app based on a ranking value determined by the user's ranking and other information about the venues.  (*Id.* at 1-2.)

73.    The Foursquare system allows a user to provide feedback to a venue instance by providing information whether the user wants to see that or similar venue instances in their Foursquare app or not.  After providing the feedback for a venue instance (e.g. when a user provides ranking information on a venue), that particular venue instance is deleted from the list of venue instances in the Foursquare app during the next user session.  (*Id.* at 4-6.)

74.    The Foursquare system utilizes a server to provide information via a plurality of slots and at least one artificial intelligence module that ranks the pieces of information (*e.g.,* venue instances) as to how or if to be placed in the slots.  (*Id.* at 1-2.)

75.    The Foursquare system ranks the pieces of information (*e.g.,* venue instances) based at least in part on a ranking value determined by users' by the user's selecting the slotted venue instance.  (*Id.* at 3-4.)

76.    Foursquare allows user to provide feedback to a venue instance by providing information whether the user want to see venue instances like this in their Foursquare app or not. (*Id.* at 3-6.)

77.    After providing the feedback for a venue instance (*e.g.,* when a user chooses not to see a venue instance like this), that particular venue can be deleted from the list of venue instances in the Foursquare app during a next user session.  (*Id.* at 3-6.)

78.    The Foursquare servers offer a service to users (that are using a computing device) in Delaware to interact with the foursquare.com site to control information output based on user feedback about the information as recited in claim 6 of the '615 patent.

79.    Users in Delaware have used and interacted with the Foursquare system as recited in claim 6 of the '615 patent.

80.     Upon information and belief, since at least the time it received notice by this Complaint, Foursquare has induced and continues to induce others to infringe at least one claim of the '615 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Foursquare's partners and customers, whose use of the accused instrumentalities constitutes direct infringement of at least one claim of the '615 patent.

81.     In particular, Foursquare's actions that aid and abet others such as their partners and customers to infringe include advertising and distributing the accused instrumentalities and providing instruction materials, training, and services regarding the accused instrumentalities. Upon information and belief, Foursquare has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Foursquare has had actual knowledge of the '615 patent and that its acts were inducing the infringement of the '615 patent since at least the date Foursquare received notice by this Complaint that such activities infringed the '615 patent.

82.     Despite Hyper Search's notice to Foursquare through this Complaint regarding the '615 patent, Foursquare continues to infringe the '615 patent.  Upon information and belief, since at least the time it received notice by this Complaint, Foursquare's infringement has been and continues to be willful.

83.     Hyper Search has been harmed by each of Foursquare's infringing activities with respect to the '615 patent.

84.     Hyper Search reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint.  Hyper Search intends

the claim chart (Exhibit D) for the '615 Patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they are not Hyper Search's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT III
## PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 8,260,733

85.    Plaintiff incorporates the above paragraphs herein by reference.

86.    On September 4, 2012, the United States Patent and Trademark Office duly and legally issued United States Patent No. 8,260,733 ("the '733 patent").  The '733 patent is titled "Neural Network System and Method for Controlling Information Output Based on User Feedback."  The original application leading to the '733 patent was filed on October 10, 2006.  A true and correct copy of the '733 patent is attached hereto as Exhibit E and incorporated herein by reference.

87.    Plaintiff Hyper Search LLC is the assignee of all right, title and interest in the '733 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '733 Patent, including for past damages.

88.    The '733 patent relates to a system and method for controlling information output based on user feedback regarding that information.  (*See* Ex. E at 1:15-17.)  The '733 patent describes and enables "a computer network-based neural network system that controls information provided as output from the system based on learned experience gained from user feedback regarding the value of the information."  (*Id.* at 1:17–21.)

89.    Prior to the priority date of the '733 patent, systems, such as electronic mail systems, enabled users to create information filters based on attributes such as content or the initiator of a message contained in an email.  (*Id.* at 1:33-38.)

90.     These information filters suffered from the fact that these electronic mail filtering systems required that that the attributes be determined in advance and provided for the filtering. (*Id.* at 1:43-51.)

91.     These early systems required the identification of those attributes of emails, or other information, which are to be excluded before being able to create a filter.  (*Id.* at 1:43-51.)

92.     The early systems were lacking in that it is often difficult to determine the proper attributes to be used as the basis for filtering.  (*Id.* at 1:43-51.)

93.     The '733 patent overcame these disadvantages by, for example, describing and enabling a system and method for delivering information "which selects information for delivery based on indications of what subject matter a recipient is likely to find useful."  (*Id.* at 2:16-20.)

94.     The claimed technology of the '733 patent for controlling information output based on user feedback about the information was not a conventional business practice.

95.     The '733 patent does not preempt every way of "controlling information output based on user feedback about the information that includes a plurality of information sources…". ('733 patent, abstract.)

96.     The '733 patent does not preempt the field or preclude the use of other systems for controlling information output based on user feedback about the information.

97.     Other techniques for systems that control information output based on user feedback about the information are not included within the scope of the '733 patent claims. These include the prior art referenced in the '733 patent.  *See*, *e.g.*, U.S. Patent No. 6,085,178 to Bigus et al.

98.     The '733 patent claims are not directed to any "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," nor are any of the claims "a building block of the modern economy."

99.     The '733 patent does not take a well-known or established business method or process and "apply it to a general purpose computer."  Instead, the specific system and processes described in the '733 patent have no direct corollary to a business process that predates the advent of the internet.

100.     The '733 patent claims are directed toward a solution rooted in computer technology and uses technology unique to computers and networks to overcome a problem specifically arising in the realm of controlling information output based on user feedback about the information.

101.     The '733 patent claims are not directed at a mere mathematical relationship or formula.

102.     The '733 patent claims cannot be performed by a human, in the human mind, or by pen and paper.

103.     Upon information and belief, Foursquare directly infringes and continues to directly infringe at least claim 6 of the '733 patent in the State of Delaware, and elsewhere in the United States under 35 U.S.C. § 271(a) by making, using, selling, offering to sell, importing and/or practicing and causing to be practiced a method, via foursquare.com for controlling information output based on user feedback about the information, as in claim 6 of the '733 patent.  (*See* Hyper Search's Claim Chart for claim 6 of the '733 patent, Ex. E at 1-7.)

104.     The method includes conveying, in response to selection of a first network location, a list of one or more links to respective one or more second network locations.  The

method also includes modifying, as facilitated by one or more processors, at least one weight value associated with a respective at least one node of a neural network based on selection of a link, of the one or more links, by a device.  (*Id.* at 1-2.)

105.    The method also includes learning, by the neural network based on the at least one weight value, that selection of the first network location during respective epochs is followed by selection, according to respective probabilities, of a first subset of the one or more links, the respective epochs comprising durations of time for visits to the first network location by the respective devices.  (*Id.* at 4-5.)

106.    Also, the method includes conveying, during a subsequent visit to the first network location, a modified list of the one or more links comprising the first subset of the one or more links based on the determining.  (*Id.* at 5-6.)

107.    The Foursquare method provides information via a plurality of links (*e.g.,* venue instances), nodes and weighting values and at least one neural network that ranks the links to determine a subset of the links (*e.g.*, selected/remaining venue instances) for presentation at a later visit.  (*Id.* at 2-6.)

108.    The Foursquare method ranks the links (*e.g.,* venue instances) based at least in part on a ranking value determined by a user's ranking of the venues.  (*Id.* at 3-6.)

109.    Foursquare allows user to provide feedback to a venue by providing information whether the user wants to see venue instances like this in their Foursquare app.  (*Id.* at 4-5.)

110.    After providing the feedback for a venue (*e.g.,* when a user chooses not to see a venue instance like this), that particular venue instance is deleted from the list of venues in the Foursquare app during a next user session.  (*Id.* at 5-6.)

111.    The Foursquare servers offer a service to users (that are using a computing device) in Delaware to interact with the foursquare.com site to control information output based on user feedback about the information as recited in claim 6 of the '733 patent.

112.    Users in Delaware have used and interacted with the Foursquare system as recited in claim 6 of the '733 patent.

113.    Upon information and belief, since at least the time it received notice by this Complaint, Foursquare has induced and continues to induce others to infringe at least one claim of the '733 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Foursquare's partners and customers, whose use of the accused instrumentalities constitutes direct infringement of at least one claim of the '733 patent.

114.    In particular, Foursquare's actions that aid and abet others such as their partners and customers to infringe include advertising and distributing the accused instrumentalities and providing instruction materials, training, and services regarding the accused instrumentalities. Upon information and belief, Foursquare has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Foursquare has had actual knowledge of the '733 patent and that its acts were inducing the infringement of the '733 patent since at least the date Foursquare received notice by this Complaint that such activities infringed the '733 patent.

115.    Despite Hyper Search's notice to Foursquare by this Complaint regarding the '733 patent, Foursquare continues to infringe the '733 patent.  Upon information and belief, since at least the time it received notice by this Complaint, Foursquare's infringement has been and continues to be willful.

-19-

116.    Hyper Search has been harmed by each of Foursquare's infringing activities with respect to the '733 patent.

117.    Hyper Search reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for purposes of its infringement contentions or its claim constructions by the claim charts it provides with this Complaint.  Hyper Search intends the claim chart (Exhibit F) for the '733 patent to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they are not Hyper Search's preliminary or final infringement contentions or preliminary or final claim construction positions.

## **JURY DEMAND**

Plaintiff Hyper Search, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Hyper Search respectfully requests judgment for itself and against Defendant Foursquare as follows:

A.    An adjudication that Foursquare has infringed the '412 patent, the '615 patent, and the '733 patent;

B.    An award of damages to be paid by Foursquare adequate to compensate Hyper Search for Foursquare's past infringement of the '412 patent, the '615 patent, and the '733 patent, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.    A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D.    An award to Hyper Search of such further relief at law or in equity as the Court deems just and proper.

Dated: August 20, 2018                    DEVLIN LAW FIRM LLC

                                          */s/ Timothy Devlin*
                                          Timothy Devlin (#4241)
                                          tdevlin@devlinlawfirm.com
                                          Patrick R. Delaney (*Pro Hac Vice* motion to be
                                          filed)
                                          pdelaney@devlinlawfirm.com
                                          1306 N. Broom Street, 1st Floor
                                          Wilmington, DE 19806
                                          Phone: (302) 449-9010

                                          TOLER LAW GROUP, PC
                                          Jeffrey G. Toler (*Pro Hac Vice* motion to be filed)
                                          jtoler@tlgiplaw.com
                                          Benjamin R. Johnson (*Pro Hac Vice* motion to be
                                          filed)
                                          bjohnson@tlgiplaw.com
                                          Craig S. Jepson (*Pro Hac Vice* motion to be filed)
                                          cjepson@tlgiplaw.com
                                          8500 Bluffstone Cove
                                          Suite A201
                                          Austin, TX 78759
                                          Phone: (512) 327-5515

                                          *Attorneys for Plaintiff Hyper Search LLC*